IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IDEAL DOOR COMPONENTS, INC., an Oregon Corporation, | ) ) ) CV-04-1760-ST |
| Plaintiff, | ) ) |
| v. | ) FINDINGS AND ) RECOMMENDATION ON ) MOTION TO STAY |
| COND'ORKEY CORPORATION, a Montana Corporation, | ) ) ) |
| Defendant. | ) ) |

STEWART, Magistrate Judge:

## **INTRODUCTION**

This is a case of alleged patent infringement. On December 1, 2004, plaintiff Ideal Door ("Ideal Door"), filed a complaint with this court alleging that defendant Cond'orKey ("Cond'orKey") was manufacturing and marketing a product that infringed upon US Patent No. 5,159,782 ("'782 patent") entitled "Retainer for Pre-hung Door." Ideal Door is the exclusive licensee of the '782 patent. On February 3, 2005, Cond'orKey filed its Answer and

1 - FINDINGS AND RECOMMENDATION ON MOTION TO STAY

Counterclaims.  On February 14, 2005, Ideal Door filed a FRCP 12(b)(6) motion to dismiss three of the alleged counterclaims.  After this motion was fully briefed, another issue arose.  In pursuit of their belief that the '782 patent is invalid, Cond'orKey filed a request for reexamination of the patent with the United States Patent and Trademark Office ("PTO").[1]  Contemporaneously, on April 4, 2005, Cond'orKey filed a Motion to Stay this litigation pending reexamination of the '782 patent (docket #25), which Ideal Door opposes.

## **DISCUSSION**

The question of whether a motion to stay should be granted pending PTO reexamination of a patent is clearly within the court's discretion.  *Wayne Automation Corp., v. R.A. Pearson Co.,* 20 USPQ2d 1718, 1718 (ED Wa 1991).  Indeed, the question is "completely" discretionary. *Brown v. Shimano Am. Corp.*, 18 USPQ2d 1496, 1496 (CD Cal 1991).

Although whether to grant a stay is discretionary, the existing case law provides considerable guidance on this issue.  There is generally a "liberal policy of granting motions to stay proceedings pending the outcome of PTO reexamination . . . ." *ASCII v. STD Entertainment USA Inc.*, 844 F Supp 1378, 1381 (ND Cal 1994).  "One purpose of the reexamination procedure is to . . . facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F2d 1340, 1342 (Fed Cir 1983), *cert denied* 464 US 935 (1993), (parenthetical in original).  Moreover, "Congress enacted the reexamination procedure to provide an inexpensive, expedient

---

[1] Re-examination is a procedure by which any person can request that the PTO re-examine or re-evaluate the patentability of an unexpired US patent.  A request for such a reexamination must be based upon prior art patents or publications which raise a substantial new question of patentability.  Generally, the prior art patents or printed publications cited in the request are ones which were not considered by the patent examiner during the patent application process.  *See* 35 USC § 302; 37 CFR § 1.550(a).

means of determining patent validity which, if available and practical, should be deferred to by the courts." *Digital Magnetic Sys., Inc. v. Ansley,* 213 USPQ 290 (WD Okla 1982). Reexamination may reduce the complexity and length of the litigation, or help to clarify issues, defenses and evidence in advance of trial; it may reduce litigation costs, discovery problems and may serve to encourage settlement without court intervention. *GPAC Inc. v. DWW Enter. Inc.*, 144 FRD 60, 63 (D NJ 1992). Granting a stay pending reexamination is thought to be particularly "helpful" where "issues relevant to prior art are involved" because of the PTO's expertise in evaluating technical materials. *Brown*, 18 USPQ2d at 1496.

Nevertheless, courts are reluctant to grant stays where litigation has reached an advanced stage after expensive discovery and trial preparation. *Raytek v. Solfan Sys., Inc.*, 211 USPQ 405, 405 (ND Cal 1981). Courts are also reluctant to grant stays where doing so would "cause undue prejudice or present a clear tactical disadvantage to the non-moving party." *GPAC*, 144 FRD at 63. Furthermore, it is well-settled that PTO reexamination and litigation regarding patent validity may proceed concurrently, despite any chance of inconsistent results. *Ethicon, Inc. v. Quigg,* 849 F2d 1422, 1428 (Fed Cir 1988).

Cond'orKey contends that it has researched and collected prior art that demonstrates that claims 1-9 of the '782 patent are invalid, and that the patent is further clouded by prosecution estoppel issues. It asserts that PTO reexamination of these matters will prevent needless wrangling over invalid claims at trial.

Ideal Door responds that the delay associated with the stay would be highly prejudicial to its interests and do little to reduce the ultimate scope of the pending litigation. Despite Congress's desire that the PTO reexamination process serve as an efficient and inexpensive way

to resolve issues of patent validity, Ideal Door states that, in actuality, the process serves neither purpose. Ideal Door claims that the likely delay associated with granting the stay will approach two years, that Cond'orKey's chances of prevailing in the reexamination process are minimal, and that much of the conflict between the parties will remain for trial regardless of the outcome of reexamination. Ideal Door characterizes Cond'orKey's actions as egregious violations of patent law, and maintains that Cond'orKey is aggressively pursuing Ideal Door's customers, "undercutting" Ideal Door's price, and mischaracterizing Ideal Door's own product in its advertisements. In sum, Ideal Door contends that granting the stay would create prejudice through delay, which would give Cond'orKey an unfettered ability to continue its practice of willfully infringing the '782 patent.

The court recommends granting a stay for several reasons. First, this litigation is in its infancy where stays are viewed most favorably. There has been neither extensive discovery nor trial preparation. This factor has weighed rather heavily in the way in which other courts have approached this issue. *See* Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 Geo Wash L Rev 172, 173 (1997) ("stage of litigation . . . is likely the most influential factor . . .[if] filed in the early stages of litigation, a court will likely grant the motion . . . ."); *see also ASCII Corp.*, 844 F Supp at 1380 (plaintiff was unable to demonstrate that substantial expense and time had been invested in the litigation).

Second, reexamination of the '782 patent will undoubtably benefit the court should this case progress to trial by narrowing and clarifying the nature of the dispute. Congress has in effect expressed a preference that the courts involve PTO expertise where questions of patent

4 - FINDINGS AND RECOMMENDATION ON MOTION TO STAY

validity are at issue. The reexamination process may be less efficient and more expensive than Congress had envisioned. Nevertheless, this court is not willing to allow that reality to diminish its responsiveness to a preference of Congress, which was not only concerned with efficiency and expense, but also intended that courts adjudicating patent infringement cases have the benefit of PTO expertise. *See Gould,* 705 F2d at 1342 (explaining that the value of the "expert view" provided by PTO reexamination must be recognized "if the purpose of the reexamination statute is to be preserved.").

The fact that prior art is at issue also supports granting the stay. Ideal Door contends that where the products at issue are not of a highly technical nature, the need for technical expertise is diminished. While the products at issue do appear relatively simple, what matters is whether the underlying questions of patent law are complicated. *See Freeman v. Minnesota Mining & Mfg. Co.*, 661 F Supp 886, 888 (D Del 1987). At this point, this court is unable to discern whether the issues of prior art are simple or technical, a circumstance which favors and illustrates the utility of reexamination.

Third, though Ideal Door emphatically claims it will be prejudiced should the stay be granted, its claims of prejudice are largely conclusory. The court is sensitive to the prospect that Ideal Door's business may suffer from competition during the reexamination process, but this fact alone does not overwhelm the preference for PTO reexamination. If Ideal Door is correct that the infringement alleged is blatant and egregious, it may seek an injunction. *See Smith Int'l., Inc. v. Hughes Tool Co.*,718 F2d 1573, 1581 (Fed Cir), *cert denied,* 464 US 996 (1983), "[w]here validity and continuing infringement have been clearly established . . . immediate irreparable harm is presumed . . . ."). Moreover, despite the delay associated with

reexamination, should Ideal Door prevail at trial, the harm associated with any infringement that occurs during the stay would factor into the damages awarded. Here, finding merit in Ideal Door's claim of prejudice requires the court to embrace Ideal Door's view of the patent dispute itself, which at this stage is premature. Ideal Door also contends that Cond'orKey's motion to stay is merely a dilatory tactic designed not only to delay resolution of this case, but also to increase the cost of litigation. Yet, as with the claims of prejudice, this allegation is conclusory and presupposes that Cond'orKey position on the underlying patent dispute is without merit. Again, it is inappropriate for the court to embrace that supposition at this early stage in this litigation.

## **RECOMMENDATION**

Based on the foregoing, this court recommends that Cond'orKey's motion to stay (docket #25) be granted until the PTO rules on Cond'orKey's request to reexamine the patent. If the PTO denies the request to reexamine, then the stay should be lifted. If the PTO grants defendant's request to reexamine, then the stay should continue pending the outcome of the reexamination with defendant required to file status reports every three months.

///

///

///

///

///

///

///

**SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due **May 23, 2005.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 4th day of May, 2005.

                                                    /s/ Janice M. Stewart
                                                  Janice M. Stewart
                                                  United States Magistrate Judge